# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **WESCO DISTRIBUTION, INC.** <br><br> Plaintiff, <br><br> v. <br><br> **HARTCRAFT INDUSTRIES, LP** <br><br> Defendants. | Case No. 2:16-cv-0910-RWS-RSP <br><br> JURY TRIAL DEMANDED |

### FIRST SUPPLEMENTAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff WESCO Distribution, Inc. ("WESCO" or "Plaintiff") makes the following allegations against Defendant Hartcraft Industries, LP ("Hartcraft Industries") for infringement of U.S. Patent No. 9,391,433 ("Patent-in-Suit").

### THE NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S. C. §§ 1 *et seq*.

### THE PARTIES

2. WESCO is a multinational wholesale electrical distributor and services provider duly organized and existing under the laws of the State of Delaware, with its principal place of business at 225 West Station Square Drive, Suite 700, Pittsburgh, Pennsylvania 15219.

3. WESCO is an industry leader in electrical and industrial supply products and services with an extensive offering of electrical, data communications, general maintenance, repair, operating and electrical Original Equipment Manufacturer products, construction materials, and advanced supply chain management and logistics services.

1

4. Upon information and belief, Hartcraft Industries, LP is a limited partnership organized and existing under the laws of the State of Texas, with its principal place of business at 326 Paseo Encinal Street, San Antonio, Texas 78212.  Hartcraft Industries, LP may be served through its registered agent in Texas: John Greehey, 326 Paseo Encinal Street, San Antonio, Texas 78212.

5. Upon information and belief, Hartcraft Industries has bid on jobs in the telecom industry to recover space in underground conduit by removing innerduct and perform the work of recovering space in underground conduit by removing innerduct.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. Venue is proper in this District under 28 U.S.C. §§ 1391 (c) and/or § 1400(b).  On information and belief, Hartcraft Industries is deemed to reside in this judicial district, and has purposefully offered for sale and/or purposefully transacted business involving the accused products in this judicial district.  Hartcraft Industries is a Texas limited partnership.

8. Hartcraft Industries is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and judicial district, including: (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, (c) purposefully availing itself of the benefits and protections of Texas State Law by organizing and/or incorporating in Texas, and/or (d) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## THE PATENT-IN-SUIT AND FACTUAL BACKGROUND

9. WESCO is the owner, by assignment from Jerry L. Allen, of all rights, title and interest in the Patent-in-Suit, entitled "Conduit Space Recovery System" that issued on July 12, 2016.  A

true and correct copy of the Patent-in-Suit is attached as Exhibit A.

10.     Mr. Allen is a pioneer in the telecommunications industry as it relates to innovation and development of products and methods for existing cable conduit structures. Among his many efforts, Mr. Allen founded Conduct Space Recovery Systems, LLC ("CSRS"), a business focused on renewing old conduit structures by removing existing innerducts while keeping active cables in place. Removing innerducts in this manner allows telecommunications businesses to avoid the high cost of new conduit construction as well as avoid having to turn off or otherwise temporarily halt telecommunications services to customers when innerducts around active communication or power lines are removed or replaced. CSRS is a licensee of the Patent-in-Suit.

11.     Innovations developed by Allen include the "no dig" method for removing innerducts from old conduit structures claimed in the Patent-in-Suit, and a machine for facilitating that method claimed in U.S. Patent No. 9,391,434 ("the '434 Patent").

12.     Mr. Allen has also designed and developed new products for existing conduit structures, including the MAXCELL® fabric innerduct, which increases conduit capacity of existing conduit.

13.     Hartcraft Industries is a direct competitor of WESCO's licensee CSRS, and WESCO receives a financial benefit from CSRS's success in the relevant marketplace and its ability to practice the Patent-in-Suit to the exclusion of others.

14.     Rather than pursing its own independent technological innovation efforts, on information and belief, Hartcraft Industries has systematically and blatantly copied the pioneering and innovative technology of the Patent-in-Suit owned by WESCO.

15. Upon information and belief, Hartcraft Industries has been well aware of WESCO and the claims of the Patent-in-Suit since at least April 19, 2016. Specifically, Hartcraft Industries was given written notice of the claims of the Patent-in-Suit on April 19, 2016 and again on June 8, 2016.

16. Subsequently, Hartcraft Industries sought to enter into a business relationship with CSRS and WESCO for performing innerduct removal jobs, thereby understanding and recognizing the value and importance of the technology claimed in the Patent-in-Suit and the '434 Patent.

17. Hartcraft Industries was not granted a sublicense to the Patent-in-Suit nor the '434 Patent. Nonetheless, Hartcraft Industries began undertaking bids and jobs that, on information and belief, required use of the method claimed in the Patent-in-Suit in order to be economically feasible.

### COUNT 1
### (INFRINGEMENT OF U.S. PATENT NO. 9,391,433)

18. WESCO repeats and incorporates by reference each and every allegation of paragraphs 1-17 of this Complaint, as though fully set forth herein.

19. WESCO is the sole owner of the entire right, title, and interest in and to the Patent-in-Suit, including the right to sue and recover for any and all infringements thereof.

20. Within the telecommunications industry, wireline installation, removal, and maintenance jobs are typically awarded through a bidding process.

21. On information and belief, it is common for bidding specifications to call for the removal of innerducts from around existing cables in underground conduit.

22. On information and belief, it is also common for the solicitor of the bids to specifically require that the contractor be able to remove innerduct off of working or otherwise active cable.

23. On information and belief, the most economically feasible method for the removal of

4

innerduct off of active cable is the novel method protected by the Patent-in-Suit.

24. On information and belief, because of the novelty of the method claimed in the Patent-in-Suit, major telecom providers, including AT&T, have written their bidding specifications based on the method described in the Patent-in-Suit.

25. On information and belief, CSRS and WESCO first disclosed to AT&T the method claimed in the Patent-in-Suit. On further information and belief, prior to the time that AT&T learned of the method disclosed in the Patent-in-Suit none of AT&T's bidding specifications required that innerduct be removed off of working cable.

26. For example, AT&T's bidding specification has dictated that, "[t]his is a conduct recovery project, contractor must be able to remove innerduct off working fiber." Or, similarly, that "[t]his job is to remove innerducts from around existing fibers to make room for additional backbone fiber . . . . Contractor will pull . . . fiber in place after innerduct has been removed."

27. On information and belief, AT&T has awarded at least four (4) innerduct removal jobs to Hartcraft Industries in the State of Texas.

28. CSRS, a licensee to the Patent-in-Suit, also submitted bids for the four (4) AT&T innerduct removal jobs that were awarded to Hartcraft Industries. On information and belief, Hartcraft Industries was awarded the AT&T innerduct removal jobs because they offered to do the same work for a lower amount of money.

29. Prior to filing suit, WESCO and its licensee CSRS attempted to ascertain the method by which Hartcraft Industries was removing innerduct removal per these contracts with AT&T.

30. On information and belief, the claimed methods disclosed in the Patent-in-Suit are the only known economically feasible methods by which innerduct could have been removed from

active cables (as required by the AT&T innerduct removal bids) at a cost less than the cost CSRS bid for the same AT&T jobs.

31. On August 2, 2016, Mr. Carlos Richard Browning, an employee of a corporate subsidiary of WESCO, visited one of Hartcraft Industries' job sites located on S. Dewey Avenue, in Oklahoma City, to ascertain the method by which Hartcraft Industries were removing innerduct per its contracts with AT&T. Mr. Browning met with Mr. David Jeanes, who, on information and belief, works for or on behalf of Hartcraft Industries. Mr. Browning asked Mr. Jeanes to explain the method by which Hartcraft Industries was removing the innerduct from the active cable at that particular job site and what types of machines Hartcraft Industries was using to do so. Mr. Jeanes refused to answer Mr. Browning's questions, and instructed Mr. Browning to depart the worksite and stand on public property. Mr. Browning did so. From his nearest vantage point on public property, Mr. Browning was unable to ascertain the method by which Hartcraft Industries was removing the innerduct from the active cable, or the machines Hartcraft Industries was using to do so.

32. Based upon (1) the belief that the claimed methods disclosed in the Patent-in-Suit are the only known economically feasible methods by which innerduct could have been removed from active cables (as required by the AT&T innerduct removal bids) at a cost less than the cost CSRS bid for the same AT&T jobs and (2) Hartcraft Industries' refusal to reveal the method by which they were removing innerduct under the AT&T contracts, WESCO believes Hartcraft Industries' activities to be an infringement of the Patent-in-Suit.

33. WESCO suspects, but cannot confirm or deny at this time, that Hartcraft Industries may be using the machine claimed and disclosed in the '434 Patent, but does not allege such at this time due to insufficient information.

34. The methods employed by or on behalf of Hartcraft Industries to remove innerduct as required by the AT&T bids are referred to herein as the "Accused Methods."

35. The Accused Methods include recovering space in a longitudinally extending underground conduit. On information and belief, AT&T's underground conduits extend longitudinally and the four (4) innerduct removal jobs awarded to Hartcraft Industries included recovering space from longitudinally extending underground conduits.

36. The Accused Methods further include underground conduit having at least one active cable positioned within a longitudinally extending duct which is in the conduit. On information and belief, AT&T's underground conduits serviced by Hartcraft Industries in the four (4) innerduct removal jobs have at least one active cable that is positioned within a longitudinally extending duct which is in the conduit.

37. The Accused Methods further include longitudinally cutting the duct with a cutting device located adjacent to the conduit. On information and belief, for at least the four (4) innerduct removal jobs awarded to Hartcraft Industries by AT&T, Hartcraft Industries employed a method whereby they longitudinally cut the existing duct with a cutting device that was located adjacent to the conduit.

38. The Accused Method further includes removing the duct from around the active cable. On information and belief, for at least the four (4) innerduct removal jobs awarded to Hartcraft Industries by AT&T, Hartcraft Industries removed the existing duct from around an active cable.

39. As a result of Hartcraft Industries' actions, space within the AT&T conduits was recovered while the cable within the conduit remained active.

40. Hartcraft Industries is directly infringing, either literally or through the doctrine of equivalents, the Patent-in-Suit by making, using, selling, and/or offering to sell within the United

States, and/or importing into the United States, products or services which practice one or more claims of the Patent-in-Suit, including, but not necessarily limited to, Claim 1, in violation of 35 U.S.C. § 271.

41. For example, Claim 1 is directed to a method of recovering space in a longitudinally extending underground conduit having at least one active cable positioned within a longitudinally extending duct which is in the conduit comprising the steps of longitudinally cutting the duct with a cutting device located adjacent to the conduit, and removing the duct from around the active cable thereby recovering space in the conduit while maintaining the active cable in the conduit.

42. On information and belief, AT&T's underground conduits extend longitudinally and the four (4) innerduct removal jobs awarded to Hartcraft Industries included recovering space from longitudinally extending underground conduits. As such, on information and belief, Hartcraft Industries has practiced, is practicing and/or will continue to practice the Accused Methods at least because through its work on the four AT&T innerduct removal jobs Hartcraft Industries recovered space in a longitudinally extending underground conduit.

43. On further information and belief, AT&T's underground conduits serviced by Hartcraft Industries in the four (4) innerduct removal jobs have at least one active cable that is positioned within a longitudinally extending duct which is in the conduit. As such, on information and belief, Hartcraft Industries has practiced, is practicing, and/or will continue to practice the Accused Methods at least because through its work on the four AT&T innerduct removal jobs Hartcraft Industries removed space from longitudinally extending underground conduits having at least one active cable that was positioned within a longitudinally extending duct which is in the conduit.

44. On further information and belief, for at least the four (4) innerduct removal jobs awarded to Hartcraft Industries by AT&T, Hartcraft Industries employed a method whereby it longitudinally cut the existing duct with a cutting device that was located adjacent to the conduit. As such, on information and belief, Hartcraft Industries has practiced, is practicing, and/or will continue to practice the Accused Methods at least because Hartcraft Industries recovered space in a longitudinally extending underground conduit having at least one active cable positioned within a longitudinally extending duct which is in the conduit by longitudinally cutting the existing duct with a cutting device located adjacent to the conduit.

45. On further information and belief, for at least the four (4) innerduct removal jobs awarded to Hartcraft Industries by AT&T, Hartcraft Industries removed the existing duct from around an active cable. As such, on information and belief, Hartcraft Industries has practiced, is practicing, and/or will continue to practice the Accused Methods at least because Hartcraft Industries recovered space in a longitudinally extending underground conduit having at least one active cable positioned within a longitudinally extending duct which is in the conduit by longitudinally cutting the existing duct with a cutting device located adjacent to the conduit and removed the duct from around the cable.

46. On further information and belief, as a result of Hartcraft Industries' actions detailed above, space within the AT&T conduits was recovered while the cables within the conduits remained active. Accordingly, Hartcraft Industries has practiced, is practicing, and/or will continue to practice the Accused Methods and, thus, have infringed and/or will continue to infringe at least Claim 1 of the Patent-in-Suit.

47. In addition, should Hartcraft Industries' activities be found to not literally infringe the asserted claims of the Patent-in-Suit, Hartcraft Industries' activities would nevertheless infringe

the asserted claims of the Patent-in-Suit. More specifically, Hartcraft Industries' activities perform substantially the same function (recovering of space in an underground conduit), in substantially the same way (cutting the duct from around an active cable), to yield substantially the same result (recovering space in the conduit while maintaining the active cable). Hartcraft Industries would thus be liable for infringement under the doctrine of equivalents.

48. By reasons of Hartcraft Industries' infringing activities, WESCO has suffered, and will continue to suffer, substantial damages in an amount to be determined at trial.

49. Hartcraft Industries has had actual notice of the Patent-in-Suit and, upon information and belief, have known or should have known that its activities described above infringe the Patent-in-Suit directly or indirectly. Hartcraft Industries has nonetheless continued to engage in its infringing acts. Accordingly, Hartcraft Industries' infringement is willful and deliberate, and this case is exceptional under 35 U.S.C. § 285.

50. Moreover, because CSRS (and thus by extension WESCO) and Hartcraft Industries are competitors in the marketplace, Hartcraft Industries' infringement has caused and will continue to cause irreparable harm to WESCO. As such, WESCO is entitled to an injunction against Hartcraft Industries' continued infringement and unauthorized use of WESCO's pioneering technology.

WHEREFORE, Plaintiff WESCO respectfully requests that the Court enter judgment as follows:

A. That Hartcraft Industries has directly or indirectly infringed one or more claims of the '433 patent;

B. That Hartcraft Industries be ordered to pay damages adequate to compensate Plaintiff for its infringement of the Patent-in-Suit, including, but not limited to, a reasonable royalty measure of damages, together with prejudgment interest and post-judgment interest thereon;

C. That Hartcraft Industries' infringement is deliberate and willful and that it be ordered to pay treble damages under 35 U.S.C. § 284;

D. A permanent injunction enjoining Hartcraft Industries and its corresponding officers, agents, servants, employees, attorneys, affiliates, divisions, subsidiaries, and all persons in active concert or participation with any of them, from infringing the Patent-in-Suit, and/or contributing to or inducing anyone to do the same;

E. A temporary injunction enjoining Hartcraft Industries and its corresponding officers, agents, servants, employees, attorneys, affiliates, divisions, subsidiaries, and all persons in active concert or participation with any of them, from infringing the Patent-in-Suit, and/or contributing to or inducing anyone to do the same;

F. That this is an exceptional case under 35 U.S.C. § 285 and that Plaintiff WESCO be awarded its reasonable attorneys' fees, costs, and expenses;

G. An award of such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

| | |
|---|---|
| Dated: December 6, 2016 | Respectfully submitted,<br><br>*/s/ Jason W. Cook*<br>Jason W. Cook<br>Texas State Bar No. 24028537<br>Shaun W. Hassett<br>Texas State Bar No. 24074372<br>McGuireWoods LLP<br>2000 McKinney Avenue<br>Suite 1400<br>Dallas, Texas 75201<br>Tel: 214-932-6400<br>Fax: 214-932-6499<br>jcook@mcguirewoods.com<br>shassett@mcguirewoods.com<br><br>***Attorneys for Plaintiff WESCO Distribution, Inc.*** |